IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

### MIDDLE DISTRICT—HARRISBURG 1857.

## Wood and Devereux *versus* Figard.

The Commonwealth is not defrauded because appropriated land is included in a second survey, upon a "speculation" instead of an "improvement" warrant.

Neither is the owner of the first survey, with which such survey interferes, injured by the character of the second warrant, if his title was gone by an adverse possession before the survey on the latter warrant was made.

A party in possession of unappropriated land, who obtains a warrant for a portion of his land, and has it located, may be said to abandon his title by improvement to the residue, but a warrant laid by an intruder upon appropriated lands will not make his title better or worse.

Its only effect would be to indicate the extent of his claim, and would not be conclusive as to that, pending the twenty-one years, but would not amount to an abandonment after the expiration of the time necessary to give title by the Statute of Limitations.

It is not error, that the court in their charge to the jury did not specify every element of possession necessary to give title by the Statute of Limitations to unenclosed and uncultivated land, if there was no prayer for such instruction.

ERROR to the Common Pleas of *Bedford county*.

This was an action of ejectment by Richard D. Wood and John Devereux against John Figard for sixty acres of land. The land in dispute is part of a tract which was surveyed on the 23d May, 1797, in pursuance of a warrant dated October 20, 1796, to John Belt, whose title by regular conveyances became vested in the plaintiffs, to whom the Commonwealth granted a patent on the 24th January, 1855.

The defendant claimed under an improvement commenced before

[Wood and Devereux *v.* Figard.]

1808, by a man of the name of Francis Moon, on an adjoining piece of land, and extended over at different times upon the Belt survey, upon which about thirty acres have been cleared—eighteen of which were cleared more than twenty-one years before this suit was brought. The interest of Moon in the land he occupied was levied on, and sold by the sheriff to Joseph Williams, in 1812. James Figard came into possession in 1813, and on the 11th December, 1815, Williams conveyed to him. From that time to his death in 1851, or 1852, James Figard lived on the land and cleared and cultivated, claiming some 300 or 400 acres. The land was assessed and taxed in the name of Moon and Figard, from 1804 to the time of trial. A witness testified that he had surveyed the land for Figard near forty years before the trial, and had marked the lines upon the ground. These boundaries included about seventy acres of the John Belt survey, he using the unenclosed woodland embraced within his boundaries as farmers are accustomed to use such land.

Figard obtained a warrant, granted to Miers Fisher for 400 acres, dated the 10th April, 1794, being one of a large batch of warrants know as the "Dallas and Ingersoll speculation warrants," and on the 29th March, 1848, had it laid on his improvement, not differing materially from his marked boundaries, and excluding a small piece of the land which it was alleged he had previously conveyed to another. This survey was accepted on the 2d February, 1849. James Figard died in 1852 upon the premises, having previously made his last will and testament in writing, wherein he devised the land in dispute to his son, John Figard, the defendant in this action.

On the trial in the court below, the plaintiff contended that James Figard, by the purchase of the Miers Fisher warrant, and having it laid upon his improvement, the lines of that survey differing from his original claim, he abandoned his title by improvement, and can go no further back in making out his title than the date of the acceptance of the Miers Fisher survey.

The court below (KIMMELL, P. J.) charged the jury as follows:—

"Plaintiffs have shown a good legal title to John Belt. Warrant dated October 20th, 1796, and survey 23d May, 1797.

"The defendant claims the land by improvement and adverse possession. If the defendant, and those under whom he claims, have had the adverse, visible, uninterrupted, and hostile possession of the land in dispute—cultivating the cleared land—cutting the timber according to the custom of the country for the use of the farm, and generally exercising acts of ownership over the whole, and paying the taxes therefor, for a period greater than twenty-one years, he has gained a title to the cleared and wood

[Wood and Devereux *v.* Figard.]

land which cannot be defeated. The jury will determine the question of fact.

" Plaintiffs say that defendant cannot avail himself of this defence, because he is estopped from claiming to hold adversely further back than the date of the acceptance of the Miers Fisher warrant—that is to say 2d February, 1849, which was laid on the land by James Figard, under whom defendant holds. That, we say, is not the law.

" If the defendant has had such possession as we describe, he is entitled to your verdict."

The jury found for the defendant.

The charge of the court below was assigned for error.

*King* and *Russell*, for plaintiffs in error.—That the court omitted to state that it was necessary to give title to the unenclosed woodland that the boundaries should have been clearly designated, at least twenty-one years before suit brought. Under the instructions given, the jury could find for the defendant without being satisfied as to the fact of the existence of the boundaries: Bell *v.* Hartley, 4 *W. & S.* 32; Hole *v.* Rittenhouse, 1 *Casey* 491.

The defendant is limited to his actual occupancy and cultivation, having neglected for forty years to designate his claim by warrant and survey: Farmers' & Mechanics' Bank *v.* Woods, 1 *Jones* 99; Ross *v.* Pleasants, 7 *Harris* 157.

The laying of this warrant was a fraud upon the Commonwealth, by which Figard evaded the payment of interest on his improvement from the date when it was commenced: Reigart *v.* Haverstick, 3 *Yeates* 591; Nicholls *v.* Lafferty, 2 *Sm. L.* 178; Coxe *v.* Ewing, 4 *Y.* 429; Ewing *v.* Knight, 1 *S. & R.* 128; Hume *v.* McFarland, 4 *Id.* 427; Burns *v.* Swift, 2 *Id.* 436; Mickel *v.* Lucas, 10 *Id.* 293.

*Cessna,* for defendant in error.

The opinion of the court was delivered by

KNOX, J.—The plaintiffs in error complain that the Court of Common Pleas did not instruct the jury that it was necessary for the defendant, in order to sustain his claim under the statute of limitations, to show that he had designated the extent of his possession, by natural or artificial boundaries, for more than twenty-one years before suit brought. Had a prayer for such instruction been made, it would have been error to have refused it. But, as the court below was not called upon to instruct the jury as to what would give possession of uncultivated and unenclosed land, we cannot reverse because every element of possession was not speci-

[Wood and Devereux *v.* Figard.]

fically referred to. We are satisfied that the plaintiff received no injury from the omission, for the evidence is clear that the extent of the defendant's claim was designated by marks upon the ground for a much longer period than necessary to give title by the statute.

In this controversy, the survey made under the Miers Fisher warrant is of no account whatever. If the land in dispute was not included in the John Belt survey, the plaintiff has no pretence of claim; if it is so included, the title of the Commonwealth is gone, and it matters not to her whether it was subsequently included in the Miers Fisher survey or not. The Commonwealth is not defrauded because appropriated land has been included in a second survey upon a "speculation" instead of an improvement warrant. Neither is the plaintiff injured by the character of the defendant's warrant; for if his title was gone before the survey, by an adverse possession, he loses nothing from the fact of the interference in the two surveys. One in possession of unappropriated land, who applies for and obtains a warrant for a portion of his claim, may be said to abandon his title by improvement as to the residue; but a warrant laid by an intruder upon appropriated lands could neither make his title better nor worse. The only possible effect it could have would be to indicate the extent of his claim; but it would not be conclusive even upon the question of possession pending the twenty-one years, much less would it amount to an abandonment after the expiration of the time necessary to give title by the statute. The instruction given by the Common Pleas was correct.

Judgment affirmed.